**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELEVATOR CONSTRUCTORS UNION LOCAL NO. 1 ANNUITY & 401(K) FUND on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RECKITT BENCKISER GROUP PLC, LAXMAN NARASIMHAN, NICANDRO DURANTE, KRISTOFFER LOE LICHT, PATRICK SLY, AND JEFFERY CARR, <br><br> Defendants. | Case No. 1:25-cv-4708-JPC-SDA <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY**
**ELEVATOR CONSTRUCTORS UNION LOCAL NO. 1 ANNUITY & 401(K) FUND FOR**
<u>**APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND............................................................................................... 2

ARGUMENT .................................................................................................................... 4

    I.    The Fund IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF ...................................................4

        A.    The Fund Filed a Timely Motion................................................................5

        B.    The Fund Has the Largest Financial Interest in the Relief Sought by the Class.......................................................................................5

        C.    The Fund Satisfies Rule 23 ........................................................................6

    II.    The Fund's SELECTION OF LEAD COUNSEL SHOULD BE APPROVED ....................................................................................................7

CONCLUSION.................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Constance Sczesny Tr. v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ...........................................................................................7

*Gill v. Abbot Laboratories, Inc.*,
    Docket No. 2322-CC1251 (Mo. Circ. Ct. Jun. 23, 2023) ........................................................3

*In re Grupo Televisa Sec. Litig.*,
    2021 WL 2000005 (S.D.N.Y. May 19, 2021) ...........................................................................6

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................5

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D. 128 (S.D.N.Y. 2007) .............................................................................................4

*Peters v. Jinkosolar Holding Co., Ltd.*,
    2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ...........................................................................5

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................................1, 7

*Taft v. Ackermans*,
    2003 WL 402789 (S.D.N.Y. Feb. 20, 2003) ............................................................................7

*Topping v. Deloitte Touche Tohmatsu CPA*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015).......................................................................................7

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .....................................................................................4, 6, 7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)..................................................................................5, 7

**Statutes**

15 U.S.C. §78u-4(a)(1) ....................................................................................................................4

15 U.S.C. §78u-4(a)(3)(A)(i) ..........................................................................................................4, 5

15 U.S.C. §78u-4(a)(3)(B) ................................................................................................. *passim*

**Other Authorities**

17 C.F.R. §240.10b-5.................................................................................................................1

Lead Plaintiff Movant Elevator Constructors Union Local No. 1 Annuity & 401(K) Fund (the "Fund" or "Movant"), on behalf of itself and all others similarly situated, respectfully submits this Memorandum of Law in support of its Motion to: (1) appoint the Fund as Lead Plaintiff of the above-captioned securities class action (the "Action"); (2) approve the Fund's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the putative Class; and (3) grant such other and further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action brought on behalf of purchasers of Reckitt Benckiser Group ("Reckitt" or the "Company") American Depositary Shares ("ADSs") between January 13, 2021, and July 28, 2024, inclusive (the "Class Period"). The Action alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) ("PSLRA"), provides that a court must appoint as lead plaintiff the "'most adequate plaintiff.'" 15 U.S.C. §78u-4(a)(3)(B)(i); *see, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004). The Fund is the most adequate Plaintiff because it timely moved to be Lead Plaintiff, has the largest financial interest in the litigation (approximately $199,311 in recoverable losses), and satisfies the

---

[1]     Defined terms have the same definitions as in the complaint filed in this Action on June 5, 2025 (the "Complaint"). *Elevator Constructors Union Local No. 1 Annuity & 401(K) Fund v. Reckitt Benckiser Group PLC*, No. 1:25-cv-04708, ECF No. 1. Unless otherwise noted, all "¶" and "¶¶" citations refer to the Complaint.

1

representative requirements set forth in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

For the reasons summarized herein and discussed more fully below, the Fund's Motion should be approved in its entirety.

### FACTUAL BACKGROUND

Reckitt, a United Kingdom ("U.K.")-based global consumer goods company, reports three operating segments: (1) Hygiene, (2) Health, and (3) Nutrition. ¶2. In 2017, Reckitt acquired Mead Johnson Nutrition ("Mead Johnson") for $19.7 billion, which effectively provided the Company with its current Nutrition segment. *See id.* Brands under Reckitt's Nutrition segment include infant and baby formulas such as Enfamil. *See id.*

Enfamil is a cow's milk-based formula designed for premature infants. ¶¶3, 19. While cow's milk-based formula was good for bulking up these babies quickly, science and research have advanced in recent years confirming strong links between cow-based products and Necrotizing Enterocolitis ("NEC") causing and/or substantially contributing to death in preterm and severely preterm, low-weight infants, along with many other health complications and long-term risks to these babies. *See id.*

Throughout the Class Period, Defendants touted the purportedly conclusive science on which Enfamil is based to assure investors and consumers of Enfamil's safety. ¶3. Unbeknownst to investors, Reckitt failed to warn investors and consumers (1) that preterm infants were at an increased risk of developing NEC by consuming Reckitt's cow's milk-based formula, Enfamil, and (2) of the attendant impact on Reckitt's sales of Enfamil and Reckitt's exposure to legal claims. ¶¶4, 41.

For example, on January 13, 2021 (the start of the Class Period), while presenting at the 39th Annual JPMorgan Virtual Healthcare Conference, Defendants touted the benefits of the Mead

Johnson acquisition and highlighted that it had enhanced Reckitt's science-based approaches to the Nutrition segment, stating in relevant part:

> [A]s I said last year, last February, the acquisition of the infant nutrition business brought 3 things for us . . . The second thing it did is it brought some strength in R&D., some of which have actually strengthened our science platforms pretty much across the portfolio, and given us the platform, particularly in areas like senior nutrition, where the science of Mead Johnson is beginning to find its [] play, but also where there's some tailwind . . .

¶22. Defendants continued to tout the benefits of the Company's investment in science—and specifically the benefits to the Company's Infant Nutrition segment—throughout the Class Period.

The truth began to emerge on March 15, 2024, when, in the case captioned *Watson vs. Mead Johnson Co.*, Docket No. 21-L-1032 (Ill. Cir. Ct. Oct. 28, 2021), a jury in St. Clair County, Illinois, returned a $60 million verdict in the first NEC lawsuit to be tried to a verdict. ¶42. The jury found that Mead Johnson was negligent and failed to warn the decedent's mother of the increased risk her preterm infant could develop NEC by consuming cow's milk-based formula. *See id.* On this news, the price of the Company's ADSs fell $1.87, or nearly 14%, from a closing price of $13.31 per share on March 14, 2024, to a closing price of $11.44 per share on March 15, 2024. ¶43.

On July 29, 2024, in the case captioned *Gill v. Abbot Laboratories, Inc.*, Docket No. 2322-CC1251 (Mo. Circ. Ct. Jun. 23, 2023), a jury in St. Louis, Missouri concluded that Abbott's specialized formula for premature babies led to a baby develop NEC and awarded the plaintiff $495 million. ¶44. On this news, the price of the Company's ADSs fell $1.02, or nearly 9%, from a closing price of $11.66 per share on July 28, 2024, to a closing price of $10.64 per share on July 29, 2024. ¶45.

3

## ARGUMENT

I.      **THE FUND IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *Id.* at (a)(3)(B). First, the plaintiff who files the action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i). Second, within 60 days after publication of the Early Notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II)-(B)(iii)(I).

Finally, "the Court is required to appoint the 'most adequate plaintiff' as lead plaintiff." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 (S.D.N.Y. 2007) (quoting 15 U.S.C. §78u-4(a)(3)(B)(i)). Under this Exchange Act provision, "the most adequate plaintiff is determined by a two-step competitive process." *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009) (citation modified). First, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member who: (a) "has either filed a complaint or made a motion for lead plaintiff in response to a notice"; (b) "has the largest financial interest in the relief sought"; and (c) "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc) (citation modified); *see also Tronox*, 262 F.R.D. at 343-44. The Rule 23 element of the presumption necessitates only a "preliminary showing that the movant satisfies the typicality and adequacy requirements of Rule 23." *Id.* at 344. Second, so long as the presumption is not rebutted, the "most adequate plaintiff" shall be appointed the lead plaintiff. *Id.* As demonstrated below, the Fund meets these requirements and should be appointed to serve as Lead Plaintiff.

4

## A.    The Fund Filed a Timely Motion

On June 5, 2025, the same day this Action was filed, a notice of pendency of the Action was published on *Business Wire*, a national newswire service. *See* Declaration of Thomas L. Laughlin, IV ("Laughlin Decl.") filed in support hereof, Ex. A. The requirements of §78u-4(a)(3)(A)(i) have, therefore, been met. The Early Notice states that those wishing to serve as Lead Plaintiff are required to move for appointment "no later than August 4, 2025" (*i.e.*, within 60 days of publication of the Early Notice). *See id.*

The Fund's motion for appointment as Lead Plaintiff is therefore timely filed. Moreover, the Fund has submitted a certification stating its willingness to serve as a representative party on behalf of the Class and provides its Class Period transactions. *See* Laughlin Decl., Ex. B.

## B.    The Fund Has the Largest Financial Interest in the Relief Sought by the Class

To its knowledge, the Fund is the Lead Plaintiff movant with the largest financial interest in the relief sought by the Class. "Courts in this District generally look at the following factors to determine financial interest: '(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . .; (3) the net Funds expended during the class period . . .; and (4) the approximate losses suffered.'" *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)). "It is well settled that '[f]inancial loss, the last factor, is the most important element of the test.'" *Id.* (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)) (alteration in original).

As evidenced by its PSLRA certification and the charts detailing its transactions and losses, the Fund purchased Reckitt ADSs during the Class Period and suffered losses as a result of Defendants' misconduct. *See* Laughlin Decl., Exs. B & C. Specifically, the Fund suffered losses of approximately $199,311. Laughlin Decl., Ex. C. As to the other relevant factors, the Fund

purchased 97,992 total ADSs of Reckitt during the Class Period, retained 64,929 ADSs as of the end of the Class Period, and expended approximately $1,486,701 on its purchases of Reckitt ADSs during the Class Period. *Id.*

The Fund thus has a significant financial interest in this case. Moreover, the Fund is unaware of any other movant that has sustained greater financial losses in connection with their Reckitt transactions during the Class Period. Therefore, the Fund has the "largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### C.    The Fund Satisfies Rule 23

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at (a)(3)(B)(iii)(I)(cc) (citation modified). Of the Rule 23 prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a motion to appoint lead plaintiff, the Court need only make findings as to the typicality and adequacy of the proposed lead plaintiff and, at this stage, those findings need only be "'preliminary.'" *Tronox*, 262 F.R.D. at 344. The Fund easily makes this preliminary showing.

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Grupo Televisa Sec. Litig.*, 2021 WL 2000005, at *2 (S.D.N.Y. May 19, 2021). Here, the claims asserted by the Fund are typical of the claims of the putative Class because, like all other Class members, it: (a) purchased shares of Reckitt ADSs during the Class Period; (b) was adversely affected by Defendants' allegedly false and misleading statements and omissions; and (c) suffered damages as a result thereof. Since the Fund's claims are based on the same legal theories and arise from the

same event, practice, or course of conduct that gives rise to the claims of other Class members, typicality is satisfied. *See Varghese*, 589 F. Supp. 2d at 397; *Taft v. Ackermans*, 2003 WL 402789, at \*3 (S.D.N.Y. Feb. 20, 2003).

A plaintiff is an adequate class representative when it possesses common interests and an absence of conflict with fellow class members and the plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation. *See Tronox*, 262 F.R.D. at 343. The Fund is "adequate" to serve as Class representative in the instant litigation because its interests are aligned with the interests of the putative Class. The Fund, like all other members of the Class, suffered losses as a result of purchasing Reckitt ADSs at prices that were artificially inflated due to Defendants' alleged misstatements. The Fund will, therefore, benefit from the same relief as other Class members. Finally, the Fund has demonstrated that it is an adequate representative by retaining competent and experienced counsel. *See LaBranche*, 229 F.R.D. at 413 (considering qualifications of proposed lead counsel in evaluating adequacy); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (same). As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Accordingly, the Fund has made a *prima facie* showing that it satisfies all of the requirements of Rule 23 for the purposes of this motion.

## II.    THE FUND'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). In making this determination, a court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." *Id*. at (a)(3)(B)(iii)(II)(aa) (citation modified). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015).

7

The Fund has selected the law firm of Scott+Scott to represent the Class. Scott+Scott has substantial experience in the prosecution of securities fraud class actions, possesses the necessary resources to efficiently conduct this litigation, and will vigorously prosecute this case on behalf of the Fund and the putative Class.[2] *See* Laughlin Decl., Ex. D (Scott+Scott firm résumé). Also, Scott+Scott currently serves as lead or co-lead counsel in numerous securities class actions pending in several U.S. District Courts, including in this Court.[3] *See also* Laughlin Decl., Ex. D. In light of the foregoing, the Court should approve the Fund's selection of Scott+Scott as Lead Counsel. The Court can be assured that by approving the Fund's choice of Lead Counsel, the putative Class will receive the highest caliber of representation.

## CONCLUSION

For all the foregoing reasons, the Fund respectfully requests that the Court: (1) appoint the Fund as Lead Plaintiff on behalf of the Class; (2) approve the Fund's selection of counsel, Scott+Scott, as Lead Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

---

[2] Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys., Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.,* HUD-L-003492-1 (Hudson Cnty. N.J. Super. Ct. NJ) ($102.5 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million).

[3] *See, e.g.*, Current Lead Counsel Appointments include: *Kohil v. Actinium Pharms., Inc.*, No. 1:25-cv-02553 (S.D.N.Y.); *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *Giraudon v. Innovative Indus. Props., Inc.*, No. 1:25-cv-00182 (D. Md.); *Jewik v. TransMedics Grp., Inc.*, No. 1:25-cv-10385 (D. Mass.); *White v. Brooge Energy Ltd.*, No. 2:24-cv-00959 (C.D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 3:24-cv-08869 (N.D. Cal.); *Marselis v. Fox Factory Holding Corp.*, No. 1:24-cv-00747 (N.D. Ga.); *City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, 2:23-cv-04146 (D.N.J.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.).

DATED:  August 4, 2025

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 *s*/ Thomas L. Laughlin, IV
Thomas L. Laughlin, IV (NY 4471975)
Donald A. Broggi (NY 4784195)
Jonathan Zimmerman (*pro hac vice* forthcoming)
Kassandra A. Nelson (*pro hac vice* forthcoming)
Nicholas S. Bruno (NY 5953245)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
dbroggi@scott-scott.com
jzimmerman@scott-scott.com
knelson@scott-scott.com
nbruno@scott-scott.com

*Counsel for Lead Plaintiff Movant Elevator Constructors Union Local No. 1 Annuity & 401(K) Fund and Proposed Lead Counsel for the Class*

**CERTIFICATE OF COMPLIANCE**
(Local Rule 7.1(c))

The undersigned counsel certifies that this Memorandum of Law complies with the length limits permitted by Local Rule 7.1(c). The brief is 2,752 words and 9 pages, excluding the portions exempted by Local Rule 7.1(c), if applicable, and uses a proportionally spaced Times New Roman typeface, 12-point in compliance with Local Rule 7.1(b)(1).

 *s/* Thomas L. Laughlin, IV
Thomas L. Laughlin, IV

*Counsel for Lead Plaintiff Movant Elevator Constructors Union Local No. 1 Annuity & 401(K) Fund and Proposed Lead Counsel for the Class*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 *s*/  Thomas L. Laughlin, IV
Thomas L. Laughlin, IV
