UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

In re RECKITT BENCKISER GROUP PLC    :   Civil Action No. 1:25-cv-04708-JPC-SDA
SECURITIES LITIGATION

:

:    <u>CLASS ACTION</u>

:

:    **ORAL ARGUMENT REQUESTED**

:

——————————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
NICANDRO DURANTE'S MOTION TO DISMISS THE AMENDED COMPLAINT
<u>PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(5)</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND...................................................................................2

III. ARGUMENT ...........................................................................................................3

    A. Durante's Motion to Dismiss for Insufficient Service of Process Should Be Denied ........................................................................................................3

        1. Legal Standard ..........................................................................................3

        2. Plaintiffs Have Exercised Due Diligence, and Are in the Process of Serving Durante Through the Hague Convention ......................................4

    B. Durante's Motion to Dismiss for Lack of Personal Jurisdiction Should Be Denied ........................................................................................................6

        1. Legal Standard ..........................................................................................6

        2. Plaintiffs' Ongoing Service of Process on Durante Does Not Preclude Personal Jurisdiction ....................................................................7

        3. There Is a Sufficient Nexus Between Durante and the United States to Support the Court's Exercise of Personal Jurisdiction over Him ............8

        4. It Is Reasonable for the Court to Exercise Personal Jurisdiction over Durante.............................................................................................12

IV. CONCLUSION.....................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Aqua Shield, Inc. v. Inter Pool Cover Team*,
2007 WL 4326793
(E.D.N.Y. Dec. 7, 2007) ...................................................................................................3

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*,
480 U.S. 102 (1987).................................................................................................9, 12, 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
305 F.3d 120 (2d Cir. 2002)............................................................................................14

*Beyond Bespoke Tailors, Inc. v. Barchiesi*,
2023 WL 2585823
(S.D.N.Y. Mar. 21, 2023) ...............................................................................................3

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)........................................................................................................13

*City of New York v. A-1 Jewelry & Pawn, Inc.*,
247 F.R.D. 296 (E.D.N.Y. 2007) ...................................................................................14

*Cromer Fin. Ltd. v. Berger*,
137 F.Supp.2d 452 (S.D.N.Y. 2001)..............................................................................13

*Daly v. Llanes*,
30 F.Supp.2d 407 (S.D.N.Y. 1998) ................................................................................5

*Das v. Rio Tinto PLC*,
332 F.Supp.3d 786 (S.D.N.Y. 2018)..............................................................................13

*Fashion Television LLC v. Aktiengesellschaft*,
2018 WL 11224596
(S.D.N.Y. Mar. 9, 2018) .................................................................................................4

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025)....................................................................................................7, 12, 13

*Gorbaty v. Mitchell Hamline Sch. of Law*,
2019 WL 3297211
(D.N.J. July 23, 2019).....................................................................................................12

*In re Fairfield Sentry Ltd.*,
671 B.R. 404 (Bankr. S.D.N.Y. 2025)...........................................................................14

**Page**

*In re Legend Indus., Inc.*,
   49 B.R. 935 (Bankr. E.D.N.Y. 1985)........................................................................6

*In re South African Apartheid Litig.*,
   643 F.Supp.2d 423 (S.D.N.Y. 2009).........................................................................5

*In re Vivendi Universal, S.A.*,
   381 F.Supp.2d 158 (S.D.N.Y. 2003).........................................................................2

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2017 WL 66281
   (N.D. Cal. Jan. 4, 2017) ...............................................................................9, 10, 12

*Kernan v. Kurz-Hastings, Inc.*,
   175 F.3d 236 (2d Cir. 1999)....................................................................................14

*Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*,
   2023 WL 6124801
   (S.D.N.Y. Sep. 19, 2023) ..............................................................................3, 4, 5, 8

*Kovalesky v. A.M.C. Associated Merch. Corp.*,
   551 F.Supp. 544 (S.D.N.Y. 1982) ............................................................................6

*Machulsky v. Hall*,
   210 F.Supp.2d 531 (D.N.J. 2002) ...........................................................................12

*Mucha v. Volkswagen Aktiengesellschaft*,
   540 F.Supp.3d 269 (E.D.N.Y. 2021),
   *aff'd sub nom. Mucha v. Winterkorn*,
   2022 WL 774877
   (2d Cir. Mar. 15, 2022) .................................................................................9, 10, 12

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*,
   2004 WL 2199547
   (S.D.N.Y. Sep. 29, 2004) ........................................................................................14

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
   2025 WL 3022826
   (S.D.N.Y. Oct. 29, 2025) .................................................................................. *passim*

*Owen v. Elastos Found.*,
   2021 WL 5868171
   (S.D.N.Y. Dec. 9, 2021)..........................................................................................14

**Page**

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002).............................................................................8, 9, 10

*Rana v. Islam*,
    305 F.R.D. 53 (S.D.N.Y. 2015) ...........................................................................3, 4, 5

*Romandette v. Weetabix Co.*,
    807 F.2d 309 (2d Cir. 1986)......................................................................................4

*Samaan v. City of New York*,
    2020 WL 3073292
    (S.D.N.Y. June 10, 2020)...........................................................................................4

*SEC v. Passos*,
    760 F.Supp.3d 95 (S.D.N.Y. 2024) .........................................................................6, 7

*SEC v. Softpoint, Inc.*,
    2001 WL 43611
     (S.D.N.Y. Jan. 18, 2001)......................................................................................13, 14

*SEC v. Straub*,
    921 F.Supp.2d 244 (S.D.N.Y. 2013)........................................................................10

*SEC v. Stubos*,
    634 F.Supp.3d 174 (S.D.N.Y. 2022).........................................................................13

*SEC v. Syndicated Food Servs. Int'l, Inc.*,
    2010 WL 3528406
    (E.D.N.Y. Sep. 3, 2010).............................................................................................13

*SEC v. Unifund SAL*,
    910 F. 2d 1028 (2d Cir. 1990).....................................................................................7

*Spin Master, Ltd. v. Aomore-US*,
    2024 WL 3030405
    (S.D.N.Y. June 17, 2024).............................................................................................8

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
    2017 WL 2378369
    (C.D. Cal. May 31, 2017) ...........................................................................................10

*Vega v. Hastens Beds, Inc.*,
    339 F.R.D. 210 (S.D.N.Y. 2021) .................................................................................4

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
 §78j(b) .......................................................................................................................1
 §78t(a) .......................................................................................................................1
 §78aa .........................................................................................................................7

17 C.F.R.
 §240.10b-5 .............................................................................................................1, 2

Federal Rules of Civil Procedure
 Rule 4 ........................................................................................................................4
 Rule 4(f) ....................................................................................................................3
 Rule 4(m) ..................................................................................................................3
 Rule 12(b)(2) ........................................................................................................1, 7
 Rule 12(b)(5) ........................................................................................................1, 5

Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund, and Plaintiffs New York State Teamsters Conference Pension and Retirement Fund and New York State Teamsters Council Health and Hospital Fund (collectively, "Plaintiffs") submit this memorandum of law in opposition to Defendant Nicandro Durante's motion to dismiss Plaintiffs' Amended Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 44) for insufficient service of process and lack of personal jurisdiction, pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(2) and 12(b)(5).

## I.    INTRODUCTION

Plaintiffs assert securities fraud claims against Reckitt Benckiser Group plc ("Reckitt" or the "Company") and former senior executives, including Nicandro Durante ("Durante") (collectively, "Defendants"), under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  Plaintiffs allege that Defendants made false and misleading statements promoting the Company's cow's-milk-based Enfamil formula products, despite having knowledge of and concealing the substantially increased risk of necrotizing enterocolitis ("NEC") in preterm infants using Enfamil.  Plaintiffs are currently in the process of serving Durante through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  And by directing false and misleading statements towards U.S. purchasers of American Depositary Shares ("ADS") sponsored by Reckitt, Durante has a sufficient and substantial nexus with the United States to support the Court's exercise of personal jurisdiction.  Plaintiffs therefore respectfully request that the Court deny Durante's motion in its entirety.[1]

---

[1] "Ex. __" and "Exs. __" refer to the exhibits attached to the Declaration of Alan I. Ellman ("Ellman Decl."), submitted herewith.  "Motion" or "Mot." refers to Durante's Memorandum of Law in Support of his Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), dated December 19, 2025.  ECF No. 57.  "¶__" and "¶¶__" refer to

## II.    FACTUAL BACKGROUND

Reckitt is a United Kingdom-based company that sponsors ADSs in the United States.  ¶17.[2] The Company has filed multiple Forms F-6 registering its ADSs with the Securities and Exchange Commission ("SEC"), Exs. 1-4, 6-7, 9, and has entered deposit agreements with J.P. Morgan Chase Bank.  Exs. 5, 8, 10.

Durante served as Reckitt's CEO from October 1, 2022 through September 30, 2023.  ¶19. Before that, he joined Reckitt's Board as a Non-Executive Director in 2013, and became the Senior Independent Director in 2019.  *Id.*  During his time with Reckitt, Durante made allegedly false and misleading statements and omissions regarding his and the Company's understanding of the risks associated with its Enfamil products, including the risk of preterm infants using Enfamil developing NEC.  Durante made or approved these statements while he was CEO, ¶¶118-119, 128, 138, 149, as well as by certifying, in his role as director, Reckitt's annual reports containing such statements. ¶¶92, 104, 107, 116, 119, 127, 128, 136, 138, 144-146, 149.

On June 9, 2025, Plaintiffs attempted to serve Durante, who resides in Brazil, *see* Declaration of Nicandro Durante in Support of Motion to Dismiss ("Durante Decl.," ECF No. 58) ¶3, via Reckitt's agent for service of process.  ECF No. 11.  On August 27, 2025, Durante's counsel stated that it did not consider this a valid form of service.  *See* Ex. 14 at 2.  Plaintiffs thereafter diligently worked with internal and external investigators to locate Durante's address in Brazil.  *See* Ellman

---

paragraphs of the Complaint.  Throughout this memorandum, all internal citations and quotation marks are omitted unless otherwise noted.

[2] The cases dealing with ADSs cited in this memorandum of law specifically refer to them as American Depositary Receipts ("ADRs"), rather than ADSs.  However, "participants in the ADR market generally consider the terms to be synonymous, and use the terms interchangeably."  *In re Vivendi Universal, S.A.*, 381 F.Supp.2d 158, 172 (S.D.N.Y. 2003).  The principles that courts apply in their discussion of ADRs therefore apply here, and ADRs and ADSs will collectively be referred to as "ADSs" in this memorandum of law, unless a quotation from a cited case specifically mentions ADRs.

Decl. ¶2.  On January 23, 2026, Plaintiffs ascertained Durante's address, *id.* ¶3, and soon thereafter

engaged Civil Action Group, an international service processor, to serve Durante through the Hague

Convention.  *Id.* ¶5; *see* Ex. 16.  On February 16, 2026, pursuant to the Hague Convention, Civil

Action Group submitted translated copies of the summons, Complaint, and Notice of Appearance of

Alan Ellman for service.  Ellman Decl. ¶6; Exs. 17-18.

III.    **ARGUMENT**

A.    **Durante's Motion to Dismiss for Insufficient Service of Process
      Should Be Denied**

Durante first argues that the Court should dismiss Plaintiffs' claims against him for

insufficient service of process.  *See* Mot. at 3-4.  Plaintiffs have diligently worked to ascertain

Durante's address in Brazil and are currently in the process of serving him through the Hague

Convention in compliance with Rule 4(f).  *See* Ellman Decl. ¶¶2-6; Exs. 16-18.  It would therefore

be premature to dismiss this action against Durante on insufficient service of process grounds.

1.    **Legal Standard**

The Federal Rules of Civil Procedure do not impose a time limit when serving an individual

located in a foreign country.  *See Rana v. Islam*, 305 F.R.D. 53, 65 (S.D.N.Y. 2015) (citing Fed. R.

Civ. P. 4(m)).  Instead, courts "have used a flexible due diligence standard in determining whether

service of process under Rule 4(f) is timely." *Aqua Shield, Inc. v. Inter Pool Cover Team*, 2007 WL

4326793, at *2 (E.D.N.Y. Dec. 7, 2007).[3]

Moreover, courts have discretion to simply quash prior faulty service instead of dismissing.

*See Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, 2023 WL 6124801, at *7 (S.D.N.Y. Sep. 19,

---

[3] "In considering [a motion to dismiss for insufficient service of process], the court must look to matters outside the complaint, including affidavits and supporting materials, to determine whether service was proper." *Beyond Bespoke Tailors, Inc. v. Barchiesi*, 2023 WL 2585823, at *2 (S.D.N.Y. Mar. 21, 2023).

2023); *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021).  Indeed, the Second Circuit "disfavors dismissal if it appears that proper service may still be obtained." *Samaan v. City of New York*, 2020 WL 3073292, at *2 (S.D.N.Y. June 10, 2020); *see also Rana*, 305 F.R.D. at 65 (denying dismissal because proper service may still be obtained through the Hague Convention); *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (denying dismissal in part because proper service could still be effected).  Quashal, rather than dismissal, "is particularly appropriate where . . . the defendant nonetheless has actual notice of the action."  *Khan Funds*, 2023 WL 6124801, at *7; *accord Romandette*, 807 F.2d at 311 ("Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice."); *see Rana*, 305 F.R.D. at 65 (giving weight to defendant's actual notice in not dismissing for insufficient service of process); *Samaan*, 2020 WL 3073292, at *3 (same); *Fashion Television LLC v. Aktiengesellschaft*, 2018 WL 11224596, at *4 (S.D.N.Y. Mar. 9, 2018) (same).

### 2.    Plaintiffs Have Exercised Due Diligence, and Are in the Process of Serving Durante Through the Hague Convention

Plaintiffs have been diligent in their efforts to serve, and are in fact in the process of serving Durante.  *See* Ellman Decl. ¶¶2-6.  Plaintiffs initially attempted to serve Durante via Reckitt's agent for service of process on June 9, 2025, and filed an affidavit of service on June 25, 2025.  ECF No. 11.  Durante's counsel first indicated to Plaintiffs on August 27, 2025 that they understood that Durante had not been served, and contended the following day that "leaving service papers at an office of Reckitt" (which was in fact the Company's agent for service of process, Ex. 8 at PDF pg. 13) was not a valid form of service.  Ex. 14 at 2-3.  Plaintiffs thereafter diligently worked with internal and external investigators to locate Durante's address in Brazil.  *See* Ellman Decl. ¶2.  On November 12, 2025, Plaintiffs emailed Durante's counsel a copy of the Complaint, and requested

Durante sign a waiver of service, to which his counsel responded that they were not authorized to do so. Ex. 15 at 1. On January 23, 2026, Plaintiffs successfully determined Durante's address in Brazil. Ellman Decl. ¶3. Plaintiffs promptly prepared a summons including Durante's address, and on January 26, 2026, submitted it to the Court for signature and issuance. *Id.* ¶4; ECF No. 66. The Court issued the summons the following day, ECF No. 67, upon which Plaintiffs contacted Civil Action Group to arrange for: (1) translation of the summons, Complaint, and Notice of Appearance of Alan Ellman into Portuguese; and (2) service of these documents on Durante through the Hague Convention. Ellman Decl. ¶5; Ex. 16. On February 16, 2026, pursuant to the Hague Convention, Civil Action Group submitted these documents for service. Ellman Decl. ¶6; Exs. 17-18.

It is therefore "premature for [Durante] to move to dismiss the complaint for failure to serve in compliance with the Hague Convention when Plaintiffs are currently in the process of doing exactly that." *Khan Funds*, 2023 WL 6124801, at *8; *see also Rana*, 305 F.R.D. at 65-66 (denying motion to dismiss when proper service could still be obtained through the Hague Convention); *Daly v. Llanes*, 30 F.Supp.2d 407, 416 (S.D.N.Y. 1998) ("the district court should not have dismissed the action for invalid service of process under the Hague Convention until the plaintiffs were given a reasonable opportunity to attempt to effect valid service of process on the defendant in a manner complying with the convention").

Not only may proper service still be obtained, but significantly, Durante also has actual notice of this action—his decision to contingently join Defendants' motion to dismiss for failure to state a claim demonstrates that he is intimately familiar both with the substantive allegations of the Complaint and Defendants' arguments to dismiss this action on the merits, making dismissal particularly inappropriate. *See* ECF Nos. 50 at 1, 51 at 1. Moreover, because dismissal pursuant to Rule 12(b)(5) must be without prejudice, *see In re South African Apartheid Litig.*, 643 F.Supp.2d

423, 431 (S.D.N.Y. 2009), dismissal would "add[] nothing to an order quashing service except burdening the courts with added paper work." *Kovalesky v. A.M.C. Associated Merch. Corp.*, 551 F.Supp. 544, 546 (S.D.N.Y. 1982); *see also In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr. E.D.N.Y. 1985) ("If proper service is still feasible, the court, to avoid the expense and delay involved in reinstituting an action, may retain jurisdiction, and quash the defective service.").

Accordingly, Durante's motion to dismiss for insufficient service of process should be denied.

### B. Durante's Motion to Dismiss for Lack of Personal Jurisdiction Should Be Denied

Durante next contends that the Court should dismiss Plaintiffs' claims against him for lack of personal jurisdiction, minimizing his extensive contacts with the United States relating to this action and making conclusory statements that jurisdiction would be unfair. *See* Mot. at 5-8. In fact, by making false and misleading statements on behalf of a company that sponsors ADSs in the United States, Durante knew that his statements were directed towards the United States and would harm the interests of its investors, thereby establishing a sufficient nexus with the Court's jurisdiction. Further, it is reasonable for the Court to exercise jurisdiction over Durante due to: (1) this forum's substantial interest in enforcing U.S. securities laws and protecting U.S. investors; (2) Plaintiffs' interest in seeking relief resulting from Durante's false and misleading statements; and (3) the minimal burden on Durante in defending this action in the United States.

#### 1. Legal Standard

"At the pleading stage, and prior to discovery, a non-movant need only make a *prima facie* showing that jurisdiction exists." *SEC v. Passos*, 760 F.Supp.3d 95, 108 (S.D.N.Y. 2024). "A prima facie showing of personal jurisdiction requires: (1) procedurally proper service of process, (2) a statutory basis for personal jurisdiction that renders such service of process effective and (3) that the

- 6 -

exercise of personal jurisdiction . . . comport with constitutional due process principles." *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 2025 WL 3022826, at *1 (S.D.N.Y. Oct. 29, 2025). In evaluating Plaintiffs' prima facie showing, the Court must "construe[] the pleadings . . . in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." *Passos*, 760 F.Supp.3d at 108.[4]

Section 27 of the Exchange Act permits the exercise of personal jurisdiction to the "limit of the Due Process Clause of the Fifth Amendment." *SEC v. Unifund SAL*, 910 F. 2d 1028, 1033 (2d Cir. 1990). Until recently, due process analysis under the Fifth Amendment consisted of a "minimum contacts" and a "reasonableness" inquiry. *See Passos*, 760 F.Supp.3d at 109. However, the Supreme Court has held that the Fifth Amendment's Due Process Clause "necessarily permits a more flexible jurisdictional inquiry" than the minimum contacts standard, while leaving open the possibility that it might still require a reasonableness inquiry. *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16, 24 (2025). Though the Supreme Court did not define the contours of this analysis, the Southern District of New York has applied a "sufficient-nexus test" to the flexible jurisdictional inquiry, in which it evaluates "whether there is a sufficient nexus between defendant and the United States such that application would be neither arbitrary nor fundamentally unfair." *Orient*, 2025 WL 3022826, at *5.

### 2. Plaintiffs' Ongoing Service of Process on Durante Does Not Preclude Personal Jurisdiction

At the outset, Durante contends that the Court lacks personal jurisdiction over him because Plaintiffs have not effected proper service on him. *See* Mot. at 5. Because Plaintiffs are in the process of properly serving Durante, *supra* §III.A.2., it would be premature to dismiss this action

---

[4] "On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Passos*, 760 F.Supp.3d at 108.

against him for lack of personal jurisdiction on service of process grounds. *See Khan Funds*, 2023 WL 6124801, at \*9; *Spin Master, Ltd. v. Aomore-US*, 2024 WL 3030405, at \*10 (S.D.N.Y. June 17, 2024) (denying dismissal on personal jurisdiction grounds despite service not being perfected because plaintiff "alleged facts sufficient to demonstrate this Court's personal jurisdiction").

### 3. There Is a Sufficient Nexus Between Durante and the United States to Support the Court's Exercise of Personal Jurisdiction over Him

A critical factor in assessing whether a sufficient nexus exists between a defendant and the United States is whether the defendant's acts "could be expected to or did produce an effect in the United States." *Orient*, 2025 WL 3022826, at \*6. To satisfy the nexus requirement, a defendant need not "act with the specific purpose of harming interests of or related to the United States."[5] *Id.* Rather, the nexus requirement is satisfied when evidence supports that the defendant was aware that his conduct would "harm[] interests of or related to the United States." *Id.*

During the Class Period,[6] Durante knew that the alleged misstatements he made and approved while he was CEO and certified as director on behalf of Reckitt—a company that sponsors ADSs traded in large volumes by United States investors (¶¶17, 200)—would be directed toward those very investors, thereby demonstrating a sufficient and substantial nexus between Durante and the United States.

A sponsored ADS is "established with the active participation of the issuer of the underlying security." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002). Specifically, a

---

[5] Durante mischaracterizes *Orient*'s holding, contending in part that "[t]he 'nexus' requirement is not satisfied unless the defendant acted with 'the specific purpose of harming interests of or related to the United States.'" Mot. at 6 (citing *Orient*, 2025 WL 3022826, at \*6). The court in fact held the opposite—that the nexus requirement may be satisfied *even if* the defendant did not act with the specific purpose of harming U.S. interests. *Orient*, 2025 WL 3022826, at \*6.

[6] The Class Period is January 13, 2021 to July 26, 2024, inclusive. ¶1.

company that sponsors ADSs is required to deposit shares with an American depositary branch and enter a deposit agreement with the depositary bank and ADS owners, defining the rights of the parties and duties of the company. *Id.* at 367, 371.  Such a company must also file a Form F-6 registering its ADSs with the SEC, which contains the terms of the depositary agreement and a description of the ADSs being registered, including information regarding fees and charges for ADS holders. *Id.* at 367.  As such, a company sponsoring ADSs "active[ly] market[s] [] its equity interests to American investors" and takes "affirmative steps purposefully directed at the American investing public," thereby "avail[ing] itself of the privilege of conducting activities in the American securities market" and "establish[ing] the requisite minimum contacts with the United States." *Id.* at 371; *see Mucha v. Volkswagen Aktiengesellschaft*, 540 F.Supp.3d 269, 288 (E.D.N.Y. 2021), *aff'd sub nom. Mucha v. Winterkorn*, 2022 WL 774877 (2d Cir. Mar. 15, 2022) (stating that ADSs allow American investors to gain exposure to a foreign company, and in turn allow the company to market securities to investors in the United States); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 66281, at \*5 (N.D. Cal. Jan. 4, 2017) (highlighting that a company sponsoring ADSs is directly involved in their domestic offering); *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (conduct demonstrating intent to serve a market includes "designing the product for the market in the forum State").

Thus, an individual who makes or approves allegedly false and misleading statements on behalf of a company that sponsors ADSs, regardless of whether they trade over the counter or on a national exchange,[7] directs those statements towards U.S. investors and knows that those investors

---

[7] Courts have explicitly and implicitly rejected the notion that an ADS trading over the counter, rather than on a national exchange, weighs against a finding of purposeful availment. *See, e.g.*, *Pinker*, 292 F.3d at 372 ("The mere fact that [Roche's] ADRs were not listed on an American stock exchange does not demonstrate that Roche did not seek to avail itself of the American securities market, for even though Roche ADRs were not traded on an exchange, [they] were actively traded

will rely on such statements. *See Mucha*, 540 F.Supp.3d at 284-85 (finding personal jurisdiction over members of the board of management who approved misleading reports of a company that sponsors ADSs because they directed statements toward the United States and knew investors would rely on them); *Volkswagen*, 2017 WL 66281, at *21 (finding personal jurisdiction over the CEO, in part, because by making and signing off on false statements in annual reports of a company sponsoring ADSs, the CEO knew U.S. investors would likely be harmed); *Pinker*, 292 F.3d at 372 ("[A] foreign corporation that has created an American market for its securities can fairly expect that that market will rely on reports and media releases issued by the corporation."); *see also SEC v. Straub*, 921 F.Supp.2d 244, 255 (S.D.N.Y. 2013) (because defendants' conduct was designed to violate U.S. securities laws, it was "necessarily directed toward the United States, even if not principally directed there"). As a result, the individual knows that such statements will harm the interests of U.S. investors, thereby satisfying the sufficient-nexus test. *Orient*, 2025 WL 3022826, at *6.

Durante's attempt to cast Reckitt merely as a "company that is not a U.S. issuer of securities," Mot. at 6-7; Durante Decl. ¶9, and his contention that his statements did not target U.S. investors, Mot. at 7; Durante Decl. ¶7, obfuscate his and the Company's "direct[] involve[ment] in the domestic offering of the ADRs." *Volkswagen*, 2017 WL 66281, at *5. By sponsoring its ADSs, Reckitt took active steps to market them to U.S. investors and purposefully avail itself of the American securities market: it filed multiple F-6 Registration Statements with the SEC, Exs. 1-4, 6-

---

on the over-the-counter market[.]"); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 WL 2378369, at *8 (C.D. Cal. May 31, 2017) ("The fact that Daimler ADRs were not listed on an American stock exchange does not demonstrate that Daimler AG did not seek to avail itself of the American securities market."); *Mucha*, 540 F.Supp.3d at 284, 287 (finding personal jurisdiction over individual defendants of company whose ADSs trade over the counter, rather than on a national exchange); *Volkswagen*, 2017 WL 66281, at *1, *22 (finding personal jurisdiction over defendant company whose ADSs trade over the counter, rather than on a national exchange).

7, 9, entered deposit agreements with J.P. Morgan Chase Bank, Exs. 5, 8, 10, and promoted its ADSs in its annual reports. *See* Exs. 11 at 238, 12 at 269, 13 at 242. Notably, the operative deposit agreement for Reckitt's ADSs contains a forum selection clause in which Reckitt consents to jurisdiction in New York and requires ADS purchasers to consent to exclusive jurisdiction in New York as well. *See* Mot. at 2; Declaration of Timothy J. Perla in Support of Defendants' Motion (ECF No. 53, the "Perla Decl.") Ex. 5 at PDF pgs. 37-38 (pgs. 10-11 of operative deposit agreement).[8]

Durante, knowing that Reckitt sponsors ADSs, made or approved false and misleading statements while he was CEO, ¶¶118-119, 128, 138, 149, and certified false and misleading statements in the Company's annual reports by signing those reports' Statements of Directors' Responsibilities.[9] ¶¶92, 104, 107, 116, 119, 127, 128, 136, 138, 144-146, 149; Exs. 11 at 161, 12 at 192, 13 at 160. Durante therefore directed his statements towards U.S. investors, and knew that they would rely on such statements. Moreover, he was actively involved in making the Company's ADSs

---

[8] The operative deposit agreement states as follows: "By holding an ADS or an interest therein, Holders and owners of ADSs each irrevocably agree that any legal suit, action or proceeding against or involving the Company or the Depositary, arising out of or based upon this Deposit Agreement, the ADSs or the transactions contemplated herein, therein or hereby, may only be instituted in a state or federal court in New York, New York, and by holding an ADS or an interest therein each irrevocably waives any objection which it may now or hereafter have to the laying of venue of any such proceeding, and irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding." Perla Decl. Ex. 5 at PDF pg. 38 (pg. 11 of operative deposit agreement).

[9] The Statements of Directors' Responsibilities in Reckitt's annual reports are signed on behalf of the Company's directors and certify the accuracy of the information contained in them. *See* Ex. 13 at 160. These statements generally contain similar language. For example, the 2022 Annual Report's Statement of Directors' Responsibilities states, "We confirm that to the best of our knowledge . . . the Annual Report and Financial Statements includes [sic] a fair review of the development and performance of the business and the position of the issuer and the undertakings included in the consolidation taken as a whole, together with a description of the principal risks and uncertainties that they face. . . . We consider the Annual Report and Financial Statements, taken as a whole, is fair, balanced and understandable and provides the information necessary for shareholders to assess the Group's position and performance, business model and strategy." *Id.*

available and marketing them to U.S. investors, signing multiple of Reckitt's Forms F-6,[10] Exs. 6-7, 9, as well as the responsibility statements of the Company's annual reports that advertised Reckitt's ADSs, further demonstrating his intention to target U.S. investors. Ex. 11 at 161, 238; Ex. 12 at 192, 269; Ex. 13 at 160, 242; *see Mucha*, 540 F.Supp.3d at 284 (signing an annual report promoting the company's ADSs demonstrated intent to reach U.S. investors); *Volkswagen*, 2017 WL 66281, at \*22 (by offering and benefitting from ADSs being available to U.S. investors, CEO purposefully availed himself of the benefits of doing business in the United States). As such, his conduct would not only be sufficient to fulfill the pre-*Fuld* "minimum contacts" test—it substantially satisfies the looser "sufficient nexus" jurisdictional inquiry articulated in *Orient*, in that Durante knew that his statements would produce the effect of "harming interests of or related to the United States."[11] *Orient*, 2025 WL 3022826, at \*6.

### 4.    It Is Reasonable for the Court to Exercise Personal Jurisdiction over Durante

Reasonableness "will depend in each case 'on an evaluation of several factors,' including 'the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief.'" *Fuld*, 606 U.S. at 24 (quoting *Asahi*, 480 U.S. at 113). "The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult

---

[10] Durante curiously suggests that he in fact did not sign any such documents, stating that the Complaint did not allege that he signed any documents filed with the SEC. *See* Mot. at 7.

[11] Durante cites two inapposite cases to support his contention that a statement targeting a global audience is not sufficient for personal jurisdiction. Mot. at 7. However, Durante did not merely target a global audience—he knew and was actively involved in marketing Reckitt's ADSs to U.S. investors, thereby directing his statements towards those very investors. In stark contrast, defendants in the cases Durante cites did little to direct their statements toward the forum in question. *See Machulsky v. Hall*, 210 F.Supp.2d 531, 542 (D.N.J. 2002) (holding that posting a statement on the feedback page of an eBay seller does not target the forum of the seller); *Gorbaty v. Mitchell Hamline Sch. of Law*, 2019 WL 3297211, at \*3 (D.N.J. July 23, 2019) (holding that merely having a website that is accessible in the forum state does not constitute purposeful availment of the state in which plaintiff accessed that website).

and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'" *SEC v. Stubos*, 634 F.Supp.3d 174, 187 (S.D.N.Y. 2022) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). "The reasonableness inquiry is largely academic in non-diversity cases brought under a federal law which provides for nationwide service of process because of the strong federal interests involved." *Id*. Moreover, "[t]his prong of the inquiry rarely defeats jurisdiction where a defendant has sufficient forum contacts." *SEC v. Softpoint, Inc.*, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001) (citing *Asahi*, 480 U.S. at 116 (Brennan, J., concurring)); *see also Orient*, 2025 WL 3022826, at *4 ("Only rarely have courts declined jurisdiction, on fairness grounds" in non-diversity actions brought under a federal law providing for nationwide service of process).

To the extent a reasonableness analysis is required,[12] the reasonableness factors weigh strongly in favor of the Court exercising personal jurisdiction over Durante. To begin, the interests of the forum state in adjudicating this securities fraud case are significant. "It is [] well established that '[t]he United States has a substantial interest in the enforcement of its securities laws and the protection of investors in United States securities markets.'" *Orient*, 2025 WL 3022826, at *4 (quoting *Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 479 (S.D.N.Y. 2001)); *see also SEC v. Syndicated Food Servs. Int'l, Inc.*, 2010 WL 3528406, at *3 (E.D.N.Y. Sep. 3, 2010) ("The federal interest in adjudicating the dispute is clear and substantial because the SEC's claims are brought under the federal securities laws, an area of strong federal concern[.]"); *Das v. Rio Tinto PLC*, 332 F.Supp.3d 786, 802 (S.D.N.Y. 2018) (holding that because the case, a securities class action, "was brought under federal law, the judicial system has a strong federal interest in resolving this issue here"). Moreover, the interest of Plaintiffs "in obtaining a convenient and efficient resolution . . . is

---

[12] As discussed *supra*, §III.B.1., the Supreme Court left open the possibility that the Fifth Amendment may require a reasonableness inquiry in assessing personal jurisdiction. *See Fuld*, 606 U.S. at 23.

self-evidently strong." *Owen v. Elastos Found.*, 2021 WL 5868171, at *9 (S.D.N.Y. Dec. 9, 2021); *Orient*, 2025 WL 3022826, at *4 (same).

Further, any inconvenience that Durante alludes to in arguing that he would be burdened to defend himself in the United States, *see* Mot. at 8, would provide "only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002); *accord In re Fairfield Sentry Ltd.*, 671 B.R. 404, 431-32 (Bankr. S.D.N.Y. 2025); *Softpoint*, 2001 WL 43611, at *6; *Orient*, 2025 WL 3022826, at *8. That Durante's counsel is located in the United States—specifically in New York, the venue of this action—further undermines any supposed burden Durante faces in defending this action. *See Orient*, 2025 WL 3022826, at *8; *Fairfield Sentry*, 671 B.R. at 432; *Softpoint*, 2001 WL 43611, at *6; *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 341 (E.D.N.Y. 2007).[13]

Accordingly, Durante's motion to dismiss for lack of personal jurisdiction should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Durante's Motion should be denied in its entirety.

---

[13] Durante cites a single case in arguing that it would be unreasonable for the Court to exercise personal jurisdiction because of the burden of defending himself in a United States venue. *See* Mot. at 8 (citing *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 2004 WL 2199547, at *16 (S.D.N.Y. Sep. 29, 2004)). In so doing, he mischaracterizes its holding. The court in *Northrop Grumman* did not find it unreasonable to exercise personal jurisdiction merely because of the burden on defendant. Rather, in contrast to the circumstances in this action, the court found that *all* fairness factors weighed in favor of defendant. *See Northrop Grumman*, 2004 WL 2199547, at *16-*18. Indeed, the court emphasized that the burden on defendant "alone . . . cannot overcome [plaintiff's] threshold showing of minimum contacts." *Id.* at *16 (quoting *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999)).

DATED: February 17, 2026

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ALAN I. ELLMAN
MARIO ALBA JR.
JASON EDELMAN


_/s/ Alan I. Ellman_
ALAN I. ELLMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com
malba@rgrdlaw.com
jedelman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CRISTELLE RABBAN
ALYSSA PLASCOFF
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
crabban@rgrdlaw.com
aplascoff@rgrdlaw.com

_Lead Counsel for Lead Plaintiff_

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone:  212/652-3890
vpitta@pittalaw.com

_Additional Counsel_

- 15 -

## **LOCAL RULE 7.1(C) CERTIFICATE**

Pursuant to Local Rule 7.1(c), the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word.  The total number of words in the brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 5,034 words.  By operation of Microsoft Word's word count function, this number includes legal citations, numerical information, and certain forms of punctuation.



*/s/ Alan I. Ellman*
ALAN I. ELLMAN